James H. PARHMS, Appellant,

v.

B & B VENTURES, INC., Appellee.

No. 14–96–00234–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 23, 1997.

Rehearing Overruled Jan. 23, 1997.

---

Fred M. Bosse, Houston, for appellant.

James Edward Wimberley, Beaumont, for appellee.

Before ANDERSON, O'NEILL and CANNON,* JJ.

* The Honorable Bill Cannon (retired) sitting by assignment.

## OPINION ON MOTION
## FOR REHEARING

BILL CANNON, Justice (Assigned).

We withdraw our prior opinion of December 12, 1996, and substitute this one for it. Appellant, James A. Parhms ("Parhms"), sued appellee, B & B Ventures, Inc. ("Ventures"), claiming that Ventures charged him usurious interest in a contract for the sale of real estate. Both parties moved for summary judgment. The trial court entered a final judgment granting Ventures's motion for summary judgment and denying Parhms's motion. In two points of error, Parhms contends the trial court's ruling was erroneous. We affirm the trial court's judgment.

On September 27, 1993, Ventures entered into a Contract For Deed ("the contract") to sell certain residential real estate to Parhms. The contract, as later modified, required Parhms to pay Ventures $47,450.00, payable in 180 monthly payments of $477.75, including principal and interest at the rate of 8.875% per annum. The contract also required Parhms to pay $125.00 per month for taxes and insurance, bringing his monthly payment to $602.75. The contract further contained a late payment provision that required Parhms to pay a $15.00 per day late charge for monthly payments not received by the first of the month.

The parties disagree on the method for calculating late charges under this provision. In any event, Parhms was delinquent on nearly every payment from October 1993 to August 1994. Parhms frequently did not make a payment until the end of the month or until the following month. For each delinquency, Ventures assessed a late charge and sent a notice of default and demand for payment. The notice warned that if Parhms did not comply within fifteen days, the contract would be terminated, Parhms's $5000.00 deposit would be forfeited, and Ventures would initiate a forcible entry and detainer suit.

On August 22, 1994, Parhms filed this suit alleging the late charges together with the interest charged on the principal constituted

usurious interest under TEX.REV.CIV. STAT. ANN. art. 5069–1.04 (Vernon 1987). Claiming the interest was more than twice the maximum amount allowed by applicable law, Parhms sought recovery of three times the amount of the usurious interest, forfeiture of the principal, and reasonable attorney's fees. *See* TEX.REV.CIV. STAT. ANN. art. 5069–1.06. Ventures answered with a general denial and also asserted several affirmative defenses, including that the contract contained a usury savings clause. Ventures then moved for summary judgment asserting: (1) the late charges could not be interest until they accrued and the late charges that accrued were not usurious; and (2) the usury savings clause precluded any interpretation of the contract as demanding usurious interest. Parhms filed a response and cross-motion for summary judgment asserting: (1) the usury savings clause is ineffective where usurious interest is explicitly provided by contract; and (2) the late charges constituted interest regardless of whether they accrued and that the late charges that could have been collected over the full term of the contract were usurious. After a hearing and after considering each party's memorandum of law, the trial court granted Ventures's motion and denied Parhms's motion. In its final judgment of December 20, 1995, the court did not state the basis for its ruling.[1] Parhms's appeal is from that judgment.

In two points of error, Parhms contends the trial court erred in granting Ventures's motion for summary judgment and denying his motion. When both parties move for summary judgment and one motion is granted and the other denied, the appellate court must rule on all issues presented by the motions. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The appellate court may reverse the trial court's judgment and render such judgment that the trial court should have rendered, including rendering judgment for the other movant. *Id.* A movant for summary judgment has the burden of showing that there is no genuine issue of material

---

1. In its final judgment, the trial court also ordered the deletion of the late payment provision from the contract. Although such relief was never requested below, neither party complains on appeal about this aspect of the trial court's judgment.

fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true and the court must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon* 690 S.W.2d at 548–49; *Montgomery,* 669 S.W.2d at 310.

In other words, the issue on appeal is not whether the non-movant raised a material issue of fact precluding summary judgment; rather, the issue is whether the movant proved it was entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828–29 (Tex.1970). If the appellate court finds the movant has not met its burden, it must reverse and remand the case for further proceedings. *Gibbs,* 450 S.W.2d at 828–29. To prevail on summary judgment, a plaintiff, as the movant, must conclusively establish all essential elements of a cause of action. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). Similarly a defendant, as the movant, must establish as a matter of law all the elements of an affirmative defense or that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Montgomery,* 669 S.W.2d at 310–11; *Gibbs,* 450 S.W.2d at 828.

▮▮▮ A lender commits usury if it contracts for, charges, or receives interest greater than the maximum amount allowed by law. *Woodcrest Associates, Ltd. v. Commonwealth Mortgage Corp.,* 775 S.W.2d 434, 437 (Tex. App.—Dallas 1989, writ denied) (citing TEX. REV.CIV. STAT. ANN. art. 5069–1.06). The parties acknowledge the question of whether interest is usurious is determined by reference to the maximum amount of interest that can be charged by law over the full term of the loan. *See* TEX.REV.CIV. STAT. ANN. art. 5069–1.07(a); *see also Tanner Dev. Co. v. Ferguson,* 561 S.W.2d 777, 786–87 (1977); *Nevels v. Harris,* 129 Tex. 190, 102 S.W.2d 1046, 1049 (1937). The parties also acknowledge the maximum rate of interest that Ventures could have charged by law under the

contract was 18% per annum. *See* TEX.REV. CIV. STAT. ANN. art. 5069–1.04(b)(1). The parties do not dispute that if that rate is applied to the $47,450.00 in principal and amortized over the fifteen year term of the contract, the maximum amount of interest that Ventures could have charged was $88,-331.20. Although the parties further agree a late charge generally constitutes interest, they dispute whether the late charges contracted for in this case constitute interest. *See* TEX.REV.CIV. STAT. ANN. art. 5069–1.01(a) ("'interest' is the compensation allowed by law for the use or forbearance or detention of money"); *see also Hardwick v. Austin Gallery of Oriental Rugs, Inc.,* 779 S.W.2d 438, 443 (Tex.App.—Austin 1989, writ denied). However, we need not resolve that dispute because even if those late charges constitute interest, the usury savings clause precludes any interpretation of the contract as usurious.

The late charges are authorized in the paragraph of the contract setting forth the price. That provision states in pertinent part:

> In the event that any payment required hereunder of Purchaser is not paid by the first day of the month, then Purchaser shall owe a late charge of $15.00 per day.

As we stated, the parties disagree on the method for calculating late charges under the contract. Ventures contends this provision requires a late charge of $15.00 for each day of each month that Parhms was delinquent on his payment. Parhms contends the provision requires the $15.00 per day late charge to be "stacked" for each successive month that he was delinquent. For example, if Parhms's payment were late for three successive months, the late charge in the third month was to be $45.00 per day

However, both Parhms and Ventures acknowledge, for different reasons, that their disagreement about the method of calculation is immaterial for purposes of this appeal. Parhms contends that regardless of which calculation was to be used, the total amount of late charges that could have accrued under the contract together with the amount of interest that would have accrued on the prin-

cipal under the contract exceeds $88,331.20.[2] Ventures concedes under either interpretation, the late payment provision, when viewed in isolation, authorizes the *potential* collection of usurious interest under the contract. However, Ventures contends the late payment provision cannot be viewed in isolation, but must be read in conjunction with the usury savings clause, which demonstrates the parties' intent not to contract for usurious interest. Ventures is correct.

▇▇▇ In deciding whether a contract is usurious, we must consider the whole contract. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 340–41 (Tex.1980); *First State Bank v. Dorst*, 843 S.W.2d 790, 792 (Tex.App.—Austin 1992, writ denied). It is presumed that parties intend a nonusurious contract. *Smart*, 597 S.W.2d at 341. Thus, "when the contract by its terms, construed as a whole, is doubtful, or even susceptible of more than one reasonable construction, the court will adopt the construction which comports with legality." *Id.* at 340–41 (quoting *Walker v. Temple Trust Co.*, 124 Tex. 575, 80 S.W.2d 935 (1935)). The court will not hold a contract to be in violation of the usury laws unless the contract by its express and positive terms evidences an intent to exact more interest than allowed by law. *Id.* at 341; *see Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930), *cert denied*, 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931). Because the question of whether a contract is usurious is one of contract interpretation, it is determinable as a matter of law. *See Fisk Elec. Co. v. Constructors & Associates Inc.*, 888 S.W.2d 813, 814 (Tex. 1994) (interpreting indemnity provision). As we have mentioned, the contract in question contained the following usury savings clause:

> Notwithstanding anything contained herein to the contrary, in no event shall the aggregate of any interest charged hereby, plus any other amounts charged or collect-

ed in connection hereby, plus any other amounts charged or collected in connection herewith which are deemed "interest" under the laws of the State of Texas and the United States of America in effect on the date hereof permitting the charging and collecting of the highest non-usurious interest with respect hereto (hereinafter referred to as "Applicable Law") ever exceed the maximum amount of interest which could be lawfully charged with respect hereto under Applicable Law. If any amount of interest taken or received by Seller shall be in excess of the maximum amount of interest which, under Applicable Law, could lawfully have collected hereon, then the excess shall be deemed to have been and [sic] result of a mathematical error by Seller and Purchaser, and shall be refunded promptly to Purchaser. All amounts paid or agreed to be paid in connection herewith which under Applicable Law would be deemed "interest" shall, to the extent permitted by Applicable Law, be amortized, prorated, allocated and spread throughout the term hereof.

▇▇▇ Although Texas courts have repeatedly acknowledged the validity of usury savings clauses and enforced such clauses to defeat a violation of the usury laws, the mere presence of a usury savings clause will not rescue a transaction that is necessarily usurious by its explicit terms. *Dorst*, 843 S.W.2d at 793; *Woodcrest Associates*, 775 S.W.2d at 437–38 (and cases cited therein). In other words, if the savings clause is directly contrary to the explicit terms of the contract, the clause is ineffective. *Dorst*, 843 S.W.2d at 793 (quoting *Nevels*, 102 S.W.2d at 1050). Parhms argues the usury savings clause in this case is ineffective because the contract, specifically, the late payment provision, "unequivocally calls for" usurious interest. We disagree.

▇▇▇ The contract makes clear the parties did not unequivocally agree to the collec-

---

**2.** According to Parhms, under Ventures's interpretation of the late payment provision, the $15.00 late charge would have generated interest of $79,425.00 over the contract's full term (i.e., $15.00 times 353 days, excluding the first day of each month, times 15 years). When that figure is added to $37,410.49, the amount of interest provided by the contract, the total interest that would have been generated over the contract's full term would have been $116,835.49. Using his interpretation of the late payment provision, Parhms asserts that the total amount of interest that would have been generated over the contract's full term would have been in excess of $7 million.

tion of usurious interest. The contract did not contain either a prepayment or acceleration clause requiring an advance payment of late charges. Rather, the collection of usurious interest was contingent solely on Parhms making late payments and the extent of the tardiness of those payments. Generally, a contract is usurious if there is any mode or contingency by which the lender could receive more than the maximum rate of interest allowed by law. *Dorst*, 843 S.W.2d at 792; *Dixon v. Brooks*, 678 S.W.2d 728, 729 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). However, a savings clause may cure an open-ended contingency provision, the operation of which may or may not result in a charge of usurious interest. *Dorst*, 843 S.W.2d at 793 (citing *Smart*, 597 S.W.2d at 340–41).

In *Dorst*, two promissory notes with interest rates between 10.875% and 11.875% were secured by two deeds of trust on property. 843 S.W.2d at 791. Both deeds of trusts contained identical "sales clauses" which allowed the lender to escalate the interest by not more than 2% if the property was sold during the term of the note. *Id.* The deeds of trust also contained identical usury savings clauses. *Id.* Nevertheless, in response to the lender's suit to collect the notes, the buyers of the property counterclaimed for usury. *Id.* They claimed that if the properties were sold multiple times and the lender increased the interest rate 2% each time, the interest rate could potentially exceed the rate allowed by applicable law. *Id.* at 792. The trial court ruled in favor of the buyers. *Id.* at 791. In reversing the trial court's judgment, the court of appeals pointed out the occurrence of the contingency provided in the sales clauses, i.e., the sale of the property, would not necessarily have resulted in a usurious interest rate because numerous sales would have been required before a usurious rate could have been possible. *Id.* at 794. Because usury was not a necessary result of the occurrence of the contingency, the court held the usury savings clauses were effective to cap the potential interest rate chargeable under the sales clauses. *Id.*

This case is essentially the same as *Dorst*. Here, the occurrence of the contingency, i.e., late payments, would not necessarily have resulted in usurious interest.[3] Regardless of the method for calculating the late charge, Parhms would have had to have been significantly late on numerous monthly payments before the interest generated by the late charge would have been usurious. Because usury was not a necessary result of the occurrence of the contingency, we must construe the late payment provision in light of the usury savings clause. *See id.* That clause effectively caps the potential interest at the maximum amount permitted by law and precludes any interpretation of the contract which would allow usurious interest. *See id.*

■ Finally, Parhms argues that even if the usury savings clause is effective, it provides relief only from usurious interest that is "charged" or "collected," not usurious interest that is "contracted for." This argument is without merit. As we have stated, the presumption is that parties intend a nonusurious contract. *Smart*, 597 S.W.2d at 341. The usury savings clause refers to "any interest charged *hereby*, plus any other amounts charged or collected in connection *hereby* . . . or in connection *herewith*." The adverb "hereby" means in part "by means of this act or document." Webster's Third New Int'l Dictionary 1058–59 (1993). Similarly, the adverb "herewith" means in part "with this communication" or "accompanying this writing or document." *Id.* at 1059. Thus, a plain reading of the usury savings clause shows that it is referring to interest charged or collected under the contract.

For the reasons stated, we hold the trial court correctly concluded the contract in question was not usurious as a matter of law. Accordingly, the trial court properly granted Ventures's motion for summary judgment and properly denied Parhms's motion. Points of error one and two are overruled and the trial court's judgment is affirmed.

**3.** Contrary to Parhms's suggestion, a contingency is not limited solely to situations involving acceleration or prepayment of a note.

Judgment rendered and Opinion on Motion for Rehearing filed January 23, 1997.